**In re Anonymous No. 39 D.B. 79**

Disciplinary Board Docket no. 39 D.B. 79.

HAMMERMAN, *Member,* October 21, 1980— Pursuant to Rule 208(d) of the Pa.R.D.E., the Disciplinary Board of the Supreme Court of Pennsylvania submits its findings and recommendations to your honorable court with respect to the above petition for discipline.

## I. HISTORY OF PROCEEDINGS

A petition for discipline was filed by the Office of Disciplinary Counsel on October 18, 1979 alleging

that respondent's conduct constituted violations of D.R. 1-102(A)(3); 1-102(A)(4); 1-102(A)(5); 1-102(A)(6); and 7-102(A)(5) (illegal conduct involving moral turpitude; conduct involving dishonesty, fraud, deceit or misrepresentation; conduct prejudicial to the administration of justice; and conduct adversely reflecting upon fitness to practice law). An answer to the petition was duly filed on November 14, 1979 and the matter was assigned to a hearing committee. A hearing was held on January 14, 1980 and a report was filed on April 21, 1980 recommending dismissal of the petition. Exceptions were filed by petitioner on June 2, 1980 and oral argument was requested. Respondent's brief opposing the exceptions were filed June 1, 1980. The matter was argued on August 21, 1980 before a panel consisting of three disciplinary board members and then referred to this board for review and recommendation to your honorable court.

## II. DISCUSSION

This panel finds the following facts:

1. Petitioner, whose principal office is situated at [ ] Pa., is invested, pursuant to Rule 207 of the Pa.R.D.E. with the power and duty to investigate all matters involving alleged misconduct of an attorney admitted to practice law in the Commonwealth of Pennsylvania and to prosecute all disciplinary proceedings brought in accordance with the various provisions of the aforesaid rule.

2. Respondent, [ ], is an attorney admitted to practice law in the Commonwealth of Pennsylvania, and his office is located at [ ] Street, [ ], [ ] County, Pa.

3. On or about April 1, 1977 [Sellers] entered into

an agreement of sale to convey 100 acres of land located in [ ], [ ] County, Pa. to [Buyers] for a consideration of $110,000.

4. [ ] was the real estate broker (Broker) who procured and negotiated the aforementioned transaction, through his agent, (Broker's Agent), and under the terms of the agreement of sale the Sellers promised to pay Broker a commission of $10,000, $5,000 of which was to be paid at settlement, and the remaining $5,000 subsequent thereto, at the rate of $500 for each release obtained by the Buyers from the Sellers.

5. During the aforementioned transaction the Buyers were represented by respondent and the Sellers by Sellers' attorney, but Broker was not represented by legal counsel, and at no time did he authorize any attorney to act on his behalf.

6. Following the aforementioned settlement, at which Broker was not present, and upon receipt of said $5,000 commission, Broker assumed, based on Brokers' Agent's misrepresentations that Sellers were refusing to pay additional sums, and that the Sellers owed him no additional funds, and he closed the Sellers-Buyers file. Additionally, Broker provided Brokers' Agent with $4,000 out of this commission, pursuant to his employment agreement with Brokers' Agent.

7. Thereafter, Brokers' Agent contacted Seller on various occasions regarding the additional commission owed by the Sellers under the terms of their agreement with Broker, and Brokers' Agent attempted to obtain this commission from the Sellers.

8. By a letter dated August 2, 1978, respondent brought to Sellers' attorney's attention the fact that the Sellers had failed to pay any of the remaining $5,000 commission allegedly due and owing

Broker, and that $2,000 was immediately due, plus an additional $500 with the Buyers receipt of an additional release, and respondent advised Sellers' attorney that "demand is being made for this payment at this time." Respondent stated further that "Broker Realty Company was made a party to the agreement," and that: "I hereby grant you seven days in which to make payment. The seven days shall commence from the date of this letter. If you fail to make payment in that time period, Sellers will be subjected to a lawsuit."

9. At the time respondent sent his letter of August 2, 1978 to Sellers' attorney, he did not have the permission or consent of Broker to do so, or to act as Broker's legal counsel or on his behalf, and he has never had such permission or authorization, and respondent sent said letter without Broker's knowledge.

10. Respondent demanded that Sellers' attorney forward directly to him the commission that was due Broker in an effort to obtain funds that respondent was not entitled to receive, or to obtain said funds on behalf of Brokers' Agent, whom respondent was then representing, by misleading Sellers' attorney into believing that he was Broker's legal counsel.

11. On August 4, 1978 Sellers' attorney telephoned respondent and advised him that the Sellers had agreed to his demands, and based on his belief that respondent represented Broker; by letter dated August 7, 1978 Sellers' attorney responded to respondent's letter of August 2, requesting additional time on behalf of the Sellers within which to make a $2,000 payment towards the commission due Broker. Sellers' attorney promised to "remit to you as attorney for Broker Realty Company" the commission due Broker, in spite of the fact that

respondent was not Brokers' attorney, nor authorized by Broker to receive any funds on his behalf. Sellers' attorney indicated further that the Sellers did not wish to litigate this debt, and he promised to remit $2,000 to respondent on or about September 1, 1978.

12. At no time did respondent ever advise Sellers' attorney that he was not Broker's attorney.

13. On or about September 18, 1978, Seller appeared at Broker's office and left with his secretary a check for $1,000, towards the $5,000 commission which the Sellers allegedly owed Broker. On December 27, 1978, respondent contacted Broker regarding Brokers' Agent's alleged claim against Broker for a portion of any additional commission collected by Broker from the Sellers. Respondent confirmed his conversation with Broker by his letter dated December 28, 1978, wherein he requested that Broker send him his check in payment of Brokers' Agent's share of the commission, made payable to "respondent, attorney for brokers' agent."

14. Respondent reminded Broker by his letter of January 22, 1979 that, on behalf of Brokers' Agent, he had requested his commission, but Broker refused to provide respondent with any funds, noting in his letter to respondent dated January 29, 1979 that:

". . . I was told by Brokers' Agent that the Sellers would only agree to pay a commission of Five Thousand Dollars, and to my understanding the signed agreement of April 1, 1977 was no longer in effect. This agreement was not in any files and I can only assume that someone removed it. However, after hearing that you wrote the Sellers' attorney and that Brokers' Agent approached Seller demanding his commission, I feel there was an intent to circumvent this office."

15. At no time did respondent correct Sellers' attorney's misimpression. Respondent failed to advise Sellers' attorney that his referring to himself as attorney for Broker Realty Company was inaccurate.

## CONCLUSION

Respondent misrepresented to Sellers' attorney that he was the attorney for Broker in an attempt to coerce him into paying additional funds on behalf of his client, Brokers' Agent. It must also be remembered that respondent represented Buyers in the instant real estate transaction. Since respondent is also a real estate broker with offices near Broker, he should have refrained from any other representation in this matter.

In re Anonymous, No. 22 D.B. 77, 8 D. & C. 3d 735 (1979), discusses discipline in a similar situation of an attorney licensed as a real estate broker who failed to act in an objective manner with regard to his primary client.

## RECOMMENDATION

For the reasons set forth above, the Disciplinary Board recommends to your honorable court that respondent, [   ] submit to public censure before your honorable court.

Mr. Pearlstein did not participate in the adjudication.

## ORDER

O'BRIEN, *C.J.*, And now, November 24, 1980, the report and recommendation of the Disciplinary

Board of the Supreme Court dated October 21, 1980 are hereby accepted; and it is ordered, that respondent of [   ] County be subjected to public censure by the Supreme Court, as provided by Rule 204(3) of the Rules of Disciplinary Enforcement, at the session of this court commencing January 19, 1981 in [   ].

Mr. Justice Larsen dissents and would suspend respondent.